Gordon M. Fauth, Jr. (SBN: 190280)
gfauth@finkelsteinthompson.com
Of Counsel
Rosanne L. Mah (SBN: 242628)
rmah@finkelsteinthompson.com
Of Counsel
**FINKELSTEIN THOMPSON LLP**
100 Pine Street, Suite 1250
San Francisco, California 94111
Direct: (510) 238-9610
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

[additional counsel listed on signature page]

*Attorneys for Individual and Representative*
*Plaintiff John Craig Miller*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN CRAIG MILLER**, an Individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>**GENERAL ELECTRIC COMPANY,** a New York Corporation with its Principal Place of Business in Boston, Massachusetts; and **HAIER US APPLIANCE SOLUTIONS, INC.,** d/b/a GE APPLIANCES, a Delaware Corporation.<br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Craig Miller ("Plaintiff" or "Mr. Miller"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, for his Complaint, brings this class action for damages and equitable relief against Defendants General Electric Company, Haier US Appliance Solutions, Inc., d/b/a GE Appliances ("Defendants" or "GE"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except

as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge:

## INTRODUCTION

1.     Plaintiff brings this case on behalf of himself and other consumers who purchased a defectively-designed GE oven, with an advertised self-cleaning feature that does not work.

2.     GE designs, manufactures, advertises, and sells a line of gas and electric stoves, ranges, and ovens, including the GE® 27"/30" Built-In Single/Double Convection Wall Oven ("Oven" or "Defective Oven").  GE advertises that the Oven features a self-clean-with-steam-clean option, and self-clean heavy-duty oven racks option, a system that Defendants purports will, inter alia, "clean your oven the way you want" and "conveniently clean your oven and racks together."[1] GE represents that the Oven's self-cleaning function uses "very high temperatures to clean the oven interior" and touts the Oven's capability to clean heavy soiling with the "self-clean cycle." In fact, the Oven is incapable of performing as advertised; the self-cleaning feature does not work and presents overheating and safety risks.

3.     On or around June 28, 2016, Plaintiff purchased GE's Oven, equipped with the self-cleaning feature. When Plaintiff attempted to use the Oven's self-clean feature, electrical components in the Oven failed and the Oven became unusable. Plaintiff attempted to have the Oven repaired, but as acknowledged by GE repair agents, the Oven's self-cleaning function is not repairable.

4.     GE's marketing and advertising for the Oven is false,  deceptive, and misleading to reasonable consumers because the self-cleaning function – a key product feature – does not perform as advertised or in accordance with GE's express and implied warranties. In many cases, the Oven's self-cleaning function results in overheating and an inoperable Oven.  Hundreds, if not thousands, of consumers nationwide, including Plaintiff, have complained, to no avail.[2]

5.     Plaintiff and other consumers did not receive any of the purported "self-cleaning" benefits of the Oven.  Instead, Plaintiff and consumers were forced to endure futile and

---

[1] http://products.geappliances.com/appliance/gea-specs/JK5000DFBB (last visited Nov. 10, 2017).
[2] https://www.consumeraffairs.com/homeowners/ge_wall_oven.html  (last visited Nov. 10, 2017);
https://www.consumeraffairs.com/homeowners/ge_ranges.htm?page=4 (last visited Nov. 10, 2017);
https://www.consumeraffairs.com/homeowners/ge_ranges.htm?page=7 (last visited Nov. 10, 2017);
https://www.consumeraffairs.com/homeowners/ge_ranges.htm?page=8 (last visited Nov. 10, 2017).

CLASS ACTION COMPLAINT

inconvenient service attempts to try to "repair" the Oven's self-cleaning function, an evidently irreparable feature. Additionally, Plaintiff and consumers have no choice but to manually clean virtually all surfaces of their Ovens due to the Oven's inability to self-clean and work as advertised, or, they must tolerate a perpetually dirty oven cavity.

6.      The Oven has failed to work and operate as advertised, resulting in damages to Plaintiff and consumers including, but not limited to: (1) payment for a defective product; (2) overpayment for a product falsely advertised to include a working self-cleaning function; (3) a decrease in value of their Oven due to the defect; and (4) out-of-pocket money spent in connection with servicing the Oven and/or manually cleaning the Oven.

7.      Plaintiff and consumers would not have purchased the Oven had they known it would not self-clean as promised. Plaintiff and consumers would not have purchased the Oven at the prices they paid were it not for GE's false, deceptive, and misleading advertising and/or GE's failure to disclose the material fact that its Oven's self-cleaning function is defective and incapable of performing according to GE's advertising, marketing, and express and implied warranties.

8.      Accordingly, Plaintiff brings this case and asserts claims on behalf of himself and a Class of similarly-situated consumers (defined below) for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*, ("MMWA" or "Magnuson-Moss"), the Unfair Competition Law, Bus. & Prof. C. §17200 *et seq.*, the False Advertising Law, Bus. & Prof. C. §17500 *et seq.,* and the California Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*; and for breach of contract, breach of express and implied warranties, and unjust enrichment.

## JURISDICTION

9.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; the number of members of each of the proposed Classes exceeds 100; and Plaintiff and many members of the proposed Plaintiff Classes are citizens of different states than the Defendants.

10.     This Court has personal jurisdiction over the Defendants as they conduct

substantial business in the State of California and in this Judicial District and/or the conduct complained of occurred in and/or emanated from this State and Judicial District.

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the transactions and wrongs complained of herein occurred in this Judicial District.

### INTRADISTRICT ASSIGNMENT

12.    Venue is proper in this Judicial District and the San Jose division thereof pursuant to 28 U.S.C. § 1391 subsections (b) and (c), and Civil L.R. 3-2 subsections (c) and (e). Plaintiff resides in Santa Cruz County within such division, and Defendants transacts business in this division and County and/or a substantial part of the events giving rise to the claims at issue in the litigation arose in this division and County.

### THE PARTIES

13.    Plaintiff John Craig Miller ("Plaintiff" or "Mr. Miller") is a citizen of California, and was at all relevant times a resident of Santa Cruz County. On or about June 28, 2016, Mr. Miller purchased the Defective Oven.

14.    Defendant General Electric Company ("General Electric") is a New York corporation with its principal place of business at 41 Farnsworth Street, Boston, MA 02210. General Electric is one of the largest technology, media, and financial services companies in the world. Prior to the 2016 sale of the GE Consumer and Industrial division (GE Appliances) to Quingdao Haier Co. Ltd., it developed, manufactured and distributed a wide range of durable consumer appliances, including the Defective Oven. At all relevant times, General Electric conducted extensive business in California, including marketing, distributing and selling the Defective Oven.

15.    Defendant Haier US Appliance Solutions, Inc. ("Haier"), d/b/a GE Appliances, is a Delaware corporation, with principal place of business at Appliance Park, 4000 Buechel Bank Rd, Louisville, KY 40225. GE Appliances is a subsidiary of Qingdao Haier Co., Ltd. (the Haier Group), which acquired GE Appliances, formerly known as GE Appliances and Lighting and GE Consumer and Industrial, from General Electric in 2016. At all times relevant hereto, GE

CLASS ACTION COMPLAINT

Appliances has done business throughout the United States, with extensive business operations in the state of California. GE Appliances is an engineering, manufacturing and marketing company with R&D centers in the United States, China, Korea and India, and manufacturing facilities in Kentucky, Alabama, Georgia, and Tennessee.  GE Appliances designs, develops, manufactures, markets, distributes and sells a wide variety of durable consumer products and home appliances, including refrigerators, freezers, dishwashers, washers, dryers, air conditioners, water filtration systems, water heaters and cooking appliances including the Defective Oven. GE Appliances employs 12,000 employees, including 6,000 at its Louisville, KY headquarters. GE Appliances had annual revenues of $6.4 billion in 2016.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
### The Defective Oven

16.     GE designs and manufactures gas and electric stoves, ranges, and ovens. The ovens produced by GE include the GE® 27"/30" Built-In Single/Double Convection Wall Oven ("Oven" or "Defective Oven"). GE advertises that the Oven features a self-clean-with-steam-clean option, and self-clean heavy-duty oven racks option. Unfortunately, the self-cleaning feature does not work as advertised, fails, and presents overheating and safety risks.

17.     GE Appliances, which was formerly GE Appliances and Lighting and GE Consumer and Industrial, manufactures and markets the Oven.  Upon information and belief, the Oven purchased by Plaintiff was manufactured before June 6, 2016, when GE Appliances and Lighting/GE Consumer and Industrial was still a division of General Electric, and was sold to Plaintiff after GE Appliances had been acquired by the Haier Group.

18.     The Oven was and is sold to consumers throughout the United States.

19.     According to GE, the Oven uses "very high temperatures to clean the oven interior."  GE emphasizes that consumers may clean heavily soiled ovens, where "the maximum 5 hour clean time is recommended. If you wish to use the default time, press the Start pad immediately after pressing the Clean pad. The oven will turn off automatically when the self-

clean cycle is complete. The door will stay locked until the oven has cooled down. After the oven has cooled down wipe any ash out of the oven."[3]

20.     The Oven's Instruction Manual states that there are two cleaning cycles: first, a lower heat "Steam Cleaning" cycle and then a high heat "Self Cleaning" cycle.  Subject to certain precautions, GE conveys in the Oven's Instruction Manual that the Self Cleaning function is a feature that can be used safely and repetitively.  For instance, in its "Troubleshooting Tips" for "Oven not clean after a clean cycle," the Instruction Manual instructs the consumer to "Clean up heavy spillovers before starting the clean cycle.  Heavily soiled ovens may need to self-clean again or for a longer period of time."  The Instruction Manual also instructs consumers that a "clean time can be changed to any time between 3:00 and 5:00 hours . . . . For heavily soiled ovens, the maximum 5 hour clean time is recommended." The Instructions Manual prohibits owners from using "oven cleaners, abrasive cleaners, strong liquid cleaners, steel wool, scouring pads, or cleaning powders on the interior of the oven."  Thus, a consumer has to rely on the self-cleaning function to adequately clean the Oven since the use of oven cleaner products is prohibited.

21.     GE advertises its self-cleaning technology as a key feature to distinguish the Oven from competitors' products.  Through its website, in-store point of-sale displays, and product information labels on the appliances themselves, GE touts its self-clean heavy-duty oven racks option as "clean your oven the way you want" and "conveniently clean your oven and racks together."

22.     Defendants provide a one-year "GE Electric Range Warranty" on the Oven.

23.     In its nationwide advertising and marketing campaign and materials, GE does not set forth any limitations to the performance of the Oven's self-cleaning function.

24.     Contrary to GE's representations in its advertising and marketing, the Oven does not "self-clean" or otherwise perform as advertised to consumers. Indeed, the Internet is teeming with consumer complaints that describe the extent of GE's defective self-cleaning technology. Consumers complain, by way of example, that when using the self-cleaning mode for the first

---

[3] http://products.geappliances.com/MarketingObjectRetrieval/Dispatcher?RequestType=PDF&Name=49-80722.pdf (last visited Nov. 10, 2017)

CLASS ACTION COMPLAINT

time, "the thermal fuse blew, which shut down both the top and bottom ovens . . . and now concerned about ever using the Self-Cleaning mode," and "GE makes crap!"[4]

25.    GE knew or should have known that its Oven's self-cleaning feature was defectively designed and does not function as advertised. Indeed, in some instances, dissatisfied consumers, including Plaintiff, have voiced their complaints directly to GE.  In response, Plaintiff was largely advised by representatives of GE or its agents that the Oven's self-cleaning feature does not work, and consumers should not use the self-cleaning function at all.  This advice controverts GE's advertising that the Oven's self-cleaning function will "clean your oven the way you want" and "conveniently clean your oven and racks together."

**<u>Plaintiff's Experience</u>**

26.    Mr. Miller purchased the Oven on June 28, 2016 from University Electric in Santa Clara, California, for a sum of $1,521.41.



---

[4] https://www.consumeraffairs.com/homeowners/ge_wall_oven.html (last visited Nov. 10, 2017).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    27.    On January 9 2017, Mr. Miller activated the Oven's self-cleaning cycle for the
17  first time.  Within one hour into the cycle, the Oven displayed an error code and became
18  unusable.  While the Oven's interior lights and clock turned on, the Oven was not able to warm,
19  bake, or broil.

20    28.    Mr. Miller made a service call to GE the next day and a GE technician eventually
21  came to Mr. Miller's home on January 23, 2017.  The GE technician informed Mr. Miller the
22  activation of the self-cleaning function had burned one or more components in the Oven and the
23  destruction of these components caused the Oven's failure to function. After ordering several
24  replacement parts and scheduling a follow up service appointment on February 6, 2017, the GE
25  technician then told Mr. Miller that he instructs his customers not to use the Oven's self-cleaning
26  cycle because of potential overheating problems.

27    29.    On January 11, 2017, by referral from University Electric, Mr. Miller reached out
28  to GE directly to speak about how using the Oven's self-cleaning function rendered the oven

CLASS ACTION COMPLAINT

useless.  In contrast to the GE technician, the GE representative on the telephone denied ever hearing about this problem and acted surprised when Mr. Miller relayed the GE Technician's advice to him.  The GE representative on the telephone opened a "file" regarding Mr. Miller's complaint.

30.     On February 6, 2017, a GE technician came to Mr. Miller's home for the follow-up service appointment.  The GE technician replaced electronic components that were damaged by the activation of the Oven's self-cleaning function.

31.     The Oven then functioned for the next six days, until February 12, 2017, when



Mr. Miller broiled pieces of chicken.  Approximately 8 minutes after the activation of the broil function, an error alarm flashed on the Oven's digital screen and the Oven completely shut down.  Although two hours later, Mr. Miller successfully re-activated the Oven, he remains very cautious about using the Oven's self-cleaning or any other high heat function out of fear that the Oven's electronic components will be again destroyed and that the Oven will once more be rendered unusable.

32.     Many other consumers report experiences that are similar or worse than Mr. Miller's regarding their use of the self-cleaning function or malfunctions of their GE ovens:

CLASS ACTION COMPLAINT

Sherrie of Boiling Springs, SC on Nov. 11, 2016: "Bought our brand new home just over a year ago. With all new appliances. Decided to use the self-cleaner on our wall over model# JT3500SF3SS. In the middle of the cleaning the inner glass shattered. Immediately turned off. Very dangerous and they want me to pay someone $99 to come look at it and then more for part and service."[5]

John of Plainfield, NY on Aug. 2, 2016: "We used the self-cleaning mode for the 1st time last week. The thermal fuse blew, which shut down both the top and bottom ovens. $500 cost to repair and replace fuse. Very upset with an oven only 2 years old that this would happen. Now concerned about ever using Self-Cleaning mode."[6]

Renee G. posted a message on the GE Appliances Facebook page: "Never never never buy a GE appliance - certainly not their top of the line 27" monogram double wall oven. They do look great but they are built with an inherent problem with the 2 fans. They are at the back of the oven and create so much heat that they fry the circuit boards and damage the fans. This happens over the course of a few months. From the very start you receive an error code F97. When you call the helpline (which incidently is not recorded or noted so you have no proof you called except for your word) they try to tell you it's a power outage or power surge that caused it. They tell you to flip the breaker. You assume it's fixed but it only helps temporarily. When it happens consistently they tell you it's your fuse box or your breaker has a short. They are hoping this quick fix will last just long enough to get you thru the year warranty. Lucky for me the oven blew with 3 months of warranty left. But trying to get it fixed has been a nightmare. The customer relations team -yes that's you Kevin and Frank- has been totally unhelpful and downright rude. The consumer advocate team has been ineffective. I've been lied to and strung along - appointments made and then cancelled and rescheduled by GE without asking. Promised follow up calls that never come. Solutions that work for GE but not the consumer. despite the fact that I've done nothing wrong, save for buying a $4000+ oven, I can't get satisfaction. What is a consumer to do? HELP!!!"[7]

Tina of Leland, NC on June 26, 2014: "I always keep my oven clean so I only used my self-cleaning once and this is what happened. This was November 2011 as I was hosting Thanksgiving for my family. It was like an explosion, then it sounded like someone grinding rocks in the oven and smoke. . . . I purchased [another oven] because I was scared to use my oven."[8]

Jan of Fairfax Station, VA on Feb. 27, 2013: "Last week, I turned on the self cleaning feature on my double wall oven (GE profile). When I returned from

[5] https://www.consumeraffairs.com/homeowners/ge_wall_oven.html
[6] https://www.consumeraffairs.com/homeowners/ge_wall_oven.html
[7] https://www.facebook.com/geappliances/posts/10153597323986127 (last visited July 14, 2017).
[8] https://www.consumeraffairs.com/homeowners/ge_wall_oven.html (last visited Nov. 10, 2017).

CLASS ACTION COMPLAINT

work, I was standing about 5 inches from it talking to my son when I heard a loud pop and crackling. I immediately stepped away as we both watched the oven shatter and basically explode spattering pieces of glass on the floor."[9]

33.    Defendants' nationwide advertising campaign for the Oven's self-cleaning function – a key product feature – is false, deceptive, and misleading to reasonable consumers because, contrary to GE's representations, the Oven does not "self-clean" the interior of the Ovens, but instead, causes damage and requires consumers to manually clean their Ovens — defeating the purpose of the "self-clean" Oven.

34.    Plaintiff and Class are reasonable consumers who did not expect that with proper use of the Oven its self-cleaning function would result in overheating or oven malfunctions.

35.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Defective Oven.

36.    Had Plaintiff and members of the Class known that the Oven's self-cleaning function was defective, they would not have purchased the Oven or would only have purchased it at a lower price.

## CLASS ACTION ALLEGATIONS

37.    Class Definition.  Pursuant to Fed. R. Civ. P. 23, Mr. Miller brings this action on behalf of himself and the members of a class (the "Class") initially defined as follows:

All persons who purchased a GE ® Built-In Wall Oven, Model JK5000, JT5000, JK5500 or JT5500, in the state of California.  Excluded from the Class are any entity in which GE has a controlling interest or which has a controlling interest in GE, and GE's legal representatives, assigns, and successors; and the judge assigned to this case, any member of the judge's immediate family, and the judge's courtroom staff.

38.    Numerosity.  Fed. R. Civ. P. 23(a)(1).  Members of the Class are so numerous that their joinder is impracticable.  While the exact number of Class members is unknown to Mr. Miller, it is believed that the Class is comprised of hundreds or thousands of members geographically disbursed throughout the State of California.  The Class, however, is readily identifiable from information and records in the possession of GE and can be ascertained through

---

[9]    https://www.consumeraffairs.com/homeowners/ge_wall_oven.html (last visited Nov. 10, 2017).

CLASS ACTION COMPLAINT

appropriate investigation and discovery. Class members may be notified of the pendency of this action by first class mail, electronic mail, or published notice.

39.     Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). Common questions of law and fact exist as to all members of the Class. These common questions of law and fact include, without limitation:

   a.  Whether GE's advertising of the Oven's self-cleaning function was false, deceptive, or misleading to a reasonable consumer;

   b.  Whether GE knew or should have known that the Oven's self-cleaning function was defective and could not perform as advertised;

   c.  Whether GE had a duty to disclose the design flaw in the Oven;

   d.  Whether the purported ability of the Oven's self-cleaning function is a material fact to consumers;

   e.  Whether GE knew or reasonably should have known about the defects after distributing the Oven to Mr. Miller and the Class;

   f.  Whether GE represented that the Oven had characteristics, uses, and benefits, that it does not have;

   g.  Whether GE advertised the Oven with the intent not to sell it as advertised;

   h.  Whether GE failed to reveal a material fact regarding its Oven's self-cleaning function, the omission of which would tend to mislead or deceive consumers, and which fact could not reasonably be known by consumers;

   i.  Whether GE made a representation of fact or statement of fact material to its sale of the Defective Oven such that a person could reasonably believe the represented or suggested state of affairs to be other than it actually was;

   j.  Whether GE failed to reveal facts material to its sale of the Oven in light of representations of fact made in a positive manner;

   k.  Whether GE engaged in unfair, unlawful, or deceptive business practices in marketing or selling its Defective Oven;

   l.  Whether GE violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq.;

   m.  Whether GE breached express warranties relating to its Defective Oven;

CLASS ACTION COMPLAINT

n.  Whether GE breached the implied warranty of merchantability relating to its Defective Oven;

o.  Whether GE was unjustly enriched by receiving monies in exchange for its Defective Oven;

p.  Whether GE should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the Defective Oven;

q.  Whether GE acted willfully and in wanton disregard of the consequences of its actions to consumers.

r.  Whether Mr. Miller and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages; and

s.  Whether Plaintiff and the Class are entitled to equitable relief, including an injunction enjoining GE from engaging in the wrongful and unlawful conduct alleged herein and ordering GE to engage in a corrective advertising campaign.

40.    _Typicality_.  Fed. R. Civ. P. 23(a)(3).  Mr. Miller's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by GE's actionable conduct.  Mr. Miller and all members of the Class purchased one or more Defective Ovens.  In addition, GE's conduct that gave rise to the claims of Mr. Miller and members of the Class (_i.e._, designing, manufacturing and marketing the Oven, and concealing the defect, and breaching warranties respecting the Oven) is the same for Plaintiff and all members of the Class.  Mr. Miller's claims, like the claims of the Class, arise out of the same common course of conduct by GE and are based on the same legal and remedial theories.

41.    _Adequacy_.  Fed. R. Civ. P. 23(a)(4).  Mr. Miller will fairly and adequately protect the interests of the Class because Mr. Miller has no interests antagonistic to, or in conflict with, the Class that he seeks to represent.  Mr. Miller has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions.  Mr. Miller and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial and other resources to do so.

CLASS ACTION COMPLAINT

42.    <u>Predominance</u>. Fed. R. Civ. P. 23(b)(3).  GE has engaged in a common course of conduct towards Mr. Miller and members of the Class.  The common issues arising from this conduct that affect Mr. Miller and members of the Class predominate over any individual issues.

43.    <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3).  Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  There will be no significant difficulty in the management of this case as a class action.

44.    <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2).  GE has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

45.    <u>Issue Certification</u>. Fed. R. Civ. P. 23(c)(4).  In the alternative, the common questions of fact and law, set forth above, are appropriate for issue certification on behalf of the proposed Class.

## TOLLING OF STATUTES OF LIMITATION AND ESTOPPEL

46.    On information and belief, GE was, or should have been aware, at least as early as 2012, that the Oven was defective in that the self-cleaning function cannot be used as intended or advertised without resulting in the malfunction of and/or damage to the Oven's components.

47.    Although GE was aware of the self-cleaning defect, it took no steps to warn Plaintiff or the members of the Class regarding such defect or the dangers that the defect would pose.  GE continued to sell the Defective Oven to Plaintiff and members of the Class.

48.    The defect in the design and/or manufacture of the Defective Oven was not detectible to Plaintiff and members of the Class.

49.     Defendants actively concealed the existence of the defect and/or failed to inform members of the Class of the existence of the defect.  As a result of Defendants' active concealment of the defect and/or failure to inform Plaintiff and members of the Class of the defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, Defendants are estopped from relying on any statutes of limitation in light of their concealment of the defective nature of the Oven.

## FIRST CAUSE OF ACTION

### (Violations of the Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*)

50.     Plaintiff re-alleges and incorporates each and every preceding allegation of fact as if fully written herein, and brings this cause of action on behalf of himself and on behalf of the Class against all Defendants.

51.     By their acts and omissions alleged herein, Defendants violated the California Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.* ("CLRA").

52.     Defendants are "persons" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and provide "goods" within the meaning of Cal. Civ. Code §§ 1761(a) and 1770. Defendants' customers, including Plaintiff and Class members, are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770.  Each purchase of Defendants' Oven by Plaintiff, and each Class member constitutes a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

53.     The Consumer Legal Remedies Act makes it unlawful for a company to: (a) Represent that goods have characteristics or benefits which they do not have (Cal. Civ. Code § 1770(a)(5)); (b) Represent that goods are of a particular standard, quality, or grade, if they are another (Cal Civ. Code § 1770(a)(7)); and (c) Advertise goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)).

54.     Defendants violated Cal Civ. Code § 1770(a)(5)(7) and (9) by, *inter alia,* their misrepresentations concerning the Oven and its features; by intentionally failing to disclose that usage of the Defective Oven's self-cleaning feature will cause it to malfunction and render it unusable by causing damage to its own electric components; and by advertising the Oven with an intent not to sell it as advertised.

55.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

56.    Defendants knew that their Defective Oven's self-cleaning function suffered from an inherent defect, was defectively designed or manufactured, would fail prematurely, and was not suitable for the intended use.

57.    Defendants were under a duty to Plaintiff and the Class to disclose the defective nature of the Oven's self-cleaning function and its associated costs to repair; that owners would need to manually clean the Defective Oven; and that the self-cleaning function of the Oven would not perform as represented:

a.    Defendants were in superior positions to know the true state of facts about the self-cleaning defects in the Defective Oven;

b.    Plaintiff and the Class could not reasonably have been expected to learn or discover the self-cleaning defect until they experienced the defect when attempting to self-clean their Defective Ovens; and

c.    Defendants knew that Plaintiff and the Class could not reasonably have been expected to learn about or discover the defect.

58.    By failing to disclose the Oven's defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

59.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Defective Oven, or whether to purchase it at the price charged. Had Plaintiff and Class members known that the Defective Oven's self-cleaning function was defective, they would not have purchased the Defective Oven or would have paid less for it.

60.    As a result of Defendants' misconduct, Plaintiff and the Class have been harmed and have suffered actual damages in that, among other things, the Defective Oven's self-cleaning function is not usable, is defective, and causes overheating and oven malfunction.

61.    As a result of Defendants' violations of the CLRA, Plaintiff and the Class have been harmed and have suffered and will continue to suffer actual damages.

62.     Plaintiff sent Defendants written notice complying with Cal. Civ. Code § 1782(a). Defendants did not respond within the statutory time period and have not rectified the issues complained of herein as set forth in the CLRA notice.

63.     Plaintiff has complied with Cal. Civ. Code. § 1780(d) by submitting a declaration attached hereto as Exhibit A.

64.     Plaintiff and Class members are entitled to and seek legal and equitable relief as set forth hereunder, including compensatory damages, statutory damages and punitive damages; restitution; injunctive relief in the form of an order prohibiting Defendants from engaging in the misconduct described herein and requiring Defendants to repair the Oven's defect and perform a corrective advertising campaign; and an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Violations of the Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*)

65.     Plaintiff re-alleges and incorporates each and every preceding allegation as if fully written herein, and brings this cause of action on behalf of himself and on behalf of the Class against all Defendants.

66.     Defendants' business practices violate California Business & Professions Code § 17200 *et seq.*("UCL"), which prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

67.     Defendants' practices constitute "unlawful" business practices in violation of the UCL because, among other things, they violate other laws including the MMWA, the SBCWA, the CLRA and the FAL.

68.     Defendants' actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused consumers.

69.     Defendants' actions violate California's legislative policy of protecting consumers and preventing persons from advertising defective products without adequately disclosing the defects.

CLASS ACTION COMPLAINT

70.     Defendants' actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they have a capacity and tendency to deceive members of the public.  Defendants intended for Plaintiff and Class members to rely on the representations and Plaintiff did rely on Defendants' representations.

71.     Defendants had a duty to disclose the defect in the Oven because consumers were likely to be deceived regarding the ability of the Oven to self-clean.

72.     Defendants knew its Oven suffered from an inherent defect, was defectively designed or manufactured, and was not suitable for its intended use.

73.     In failing to disclose the defect in the Oven's self-cleaning function, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

74.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

75.     As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and Class have lost money and suffered and will continue to suffer actual damages.

76.     Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

77.     Plaintiff and Class members are entitled to further equitable relief as prayed for hereunder, and to their attorney fees and costs.

## **THIRD CAUSE OF ACTION**

**(Violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

78.     Plaintiff re-alleges and incorporates each and every preceding factual allegation as if fully written herein, and brings this claim against all Defendants.

79.     Defendants publicly disseminated untrue or misleading advertising, or intended not to sell the Defective Oven as advertised, in violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL").

80.     Defendants' violations of the FAL include,  *inter alia,* representing that the Defective Oven has a repeatedly usable self-cleaning feature when, in fact, using the self-

cleaning feature just once destroys the Defective Oven's electric components so that the Defective Oven is no longer usable.

81. Defendants committed such violations of the FAL with actual knowledge or in the exercise of reasonable care should have known their advertising was untrue or misleading.

82. Plaintiff and Class members reasonably relied on Defendants' statements regarding the Defective Oven made in violation of the FAL.

83. As a result of Defendants' violations, Plaintiff and the Class members suffered injury in fact and lost money.

84. Plaintiff and Class members are entitled to equitable relief as prayed for hereunder, including an order prohibiting Defendants from engaging in the alleged misconduct described herein and requiring Defendants to repair the defect and perform a corrective advertising campaign.

**FOURTH CAUSE OF ACTION**

**(Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791,** *et seq.,* **and Breach of Implied Warranty)**

85. Plaintiff re-alleges and incorporates each and every preceding factual allegation as if fully written herein, and asserts this cause of action against all Defendants.

86. By their conduct alleged herein, Defendants violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.* ("Song-Beverly Act" or "SBCWA"), and committed breach of implied warranty.

87. The Defective Ovens are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

88. Defendants are "manufacturers" within the meaning of Cal. Civ. Code § 1791(j).

89. Defendants impliedly warranted to Plaintiff and the Class members that the Defective Ovens were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

90. Plaintiff and the Class members purchased Defective Ovens manufactured by Defendants.

91. Cal. Civ. Code § 1791.1(a) states that the "Implied warranty of merchantability"

19

CLASS ACTION COMPLAINT

or "implied warranty that goods are merchantable" means that "the consumer goods meet each of the following:"

"(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged and labeled. [and]

(4) Conform to the promises or affirmations of fact made on the container or label."

92.     As the Defective Ovens do not actually contain a repeatedly usable self-cleaning function, the Defective Ovens could not pass without objection in the appliance trade.

93.     The Defective Ovens are inadequately labeled since the label misrepresents the Defective Ovens as having a usable self-cleaning function, or fails to disclose the fact that using the self-cleaning function will render the Defective Oven unusable.

94.     Defendants' conduct caused the Defective Oven to be worth less than what Plaintiff and Class members paid and deprived Plaintiff and Class members of the benefit of their bargain.

95.     As a direct and proximate result of Defendants' breach of their duties, Plaintiff and Class members received goods in a condition that substantially impairs their value.  Plaintiff and Class members have been damaged in that the Defective Oven has a diminished value, malfunctions, and subjects them to actual and potential increased maintenance and repair costs.

96.     Plaintiff and the Class members have met all of their obligations under the warranty, or otherwise have been excused from performance of such obligations as a result of Defendants' conduct.

97.     Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and Class members are entitled to damages and other legal and equitable relief including, the purchase price of their Defective Ovens or the amount representing overpayment for or reduction in value of their Ovens, and are also entitled to their attorney fees and costs.

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty, Cal. Com. Code § 2313)

98.     Plaintiff re-alleges and incorporates each and every preceding factual allegation as if fully written herein, and asserts this claim against all Defendants.

99. Defendants breached an express warranty made to Plaintiff and Class members.

100. Defendants made an express warranty and/or approved the use of the expressed warranty to Plaintiff and the Class members that the Ovens they purchased have a repeatedly usable self-cleaning function.

101. This express warranty made to Plaintiff and the Class members was listed as a feature of the Defective Oven's specifications and is repeatedly mentioned in the Defective Oven's instruction manual. This promise regarding the nature of the products marketed by Defendants specifically related to the goods being purchased and became the basis of the bargain.

102. Plaintiff and the Class members purchased the Defective Oven based on the belief that it conformed to the express warranties that were made in the product's specifications or packaging.

103. Defendants breached the express warranty made to Plaintiff and the Class members by failing to supply goods that conformed to the warranty made. As a result, Plaintiff and Class members suffered injury.

104. Plaintiff and Class members paid money for the Oven that was labeled as having a repeatedly usable self-cleaning function. However, because activation or completion of the Defective Oven's self-cleaning function causes it to become permanently unusable, Plaintiff and the Class members did not receive the product that was promised. If Plaintiff and the Class members had known of the true nature of the product, they would not have purchased the product for the price they paid. However, they may consider purchasing the Oven in the future if the Oven is equipped with a self-cleaning function that works and will not render it permanently useless, or, at a lower price, if the Defective Oven is not advertised as having a self-cleaning feature.

105. Plaintiff and Class members have been injured and are entitled to damages and relief as set forth hereunder.

CLASS ACTION COMPLAINT

**SIXTH CAUSE OF ACTION**

**(Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.)**

106.    Plaintiff re-alleges and incorporates each and every preceding factual allegation as if fully written herein, and asserts this claim against all Defendants.

107.    By their actions, Defendants have breached written and implied warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA" or "Magnuson-Moss").

108.    The MMWA, 15 U.S.C. § 2310(d)(1), provides a private right of action for purchasers of consumer products against manufacturers or retailers who fail to comply with the terms of a written or implied warranty.

109.    Plaintiff and the Class are "consumers," Defendants are "suppliers" and "warrantors," and the Defective Ovens equipped with self-clean functions are "consumer products," as defined by the Magnuson-Moss, 15 U.S.C. § 2301.

110.    Defendants' written affirmations of fact, promises, and/or descriptions relating to its Defective Ovens equipped with the self-cleaning function, as alleged herein, as well as its one-year "GE Electric Range Warranty," are each a "written warranty" as defined in the Magnuson-Moss, 15 U.S.C. § 2301.

111.    Despite those written warranties, Defendants delivered to Plaintiff and the Class the Defective Oven equipped with a self-cleaning function that did not conform to GE's written warranties.

112.    Specifically, as alleged herein, GE warranted that its Oven has, among other things, two cleaning cycles: first, a lower heat "Steam Cleaning" cycle and then a higher heat "Self Cleaning" cycle.  However, the Defective Ovens Defendants delivered to Plaintiff and the Class could not self-clean as promised.

113.    Furthermore, pursuant to the "GE Electric Range Warranty" on its Defective Oven, GE was obligated to "provide any part of the range which fails due to a defect in materials or workmanship."  As alleged herein, Plaintiff and members of the Class purchased the Defective Oven with a defective self-cleaning function that was incapable of "self-cleaning" and performing as advertised.

114.    Defendants have breached the written warranties to Plaintiff and the class in violation of the MMWA by, among other things, their failure to tender their Oven equipped with the self-cleaning function free of defects, as well as the failure to repair, acknowledge, or respond to Plaintiff's requests to adequately fix the inherent defects of the self-cleaning function within a reasonable time.

115.    Under the Magnuson-Moss, an "implied warranty" is one that "arise[s] under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301.

116.    Under California law, a warranty that goods shall be merchantable is implied in every contract for the sale of goods by a merchant that deals in such goods.

117.    Defendants are merchants with respect to kitchen ovens.  As such, a warranty that its Oven equipped with the self-cleaning function was merchantable was implied in the contract of each sale, including each sale of the Oven to Plaintiff and the Class members.

118.    In order to be merchantable, the Oven with self-cleaning function, at a minimum, was required to: (a) pass without objection in the trade under the contract description; (b) be fit for the ordinary purposes for which such goods are used; and (c) conform to the promises or affirmations of fact made on the container.

119.    GE breached the implied warranty on its Defective Oven because, contrary to GE's representations, promises, and affirmations of fact, including on each product's label, the Defective Oven could not "self-clean" the interior of the Ovens.

120.    Indeed, the self-cleaning feature on the Defective Oven was defective when such Defective Oven and each unit thereof left the possession of Defendants and, as such, could not perform according to GE's affirmative representations that the system, among other things, had two cleaning cycles: first, a lower heat "Steam Cleaning" cycle and, second, a higher heat "Self Cleaning" cycle.  Therefore, the Defective Oven with the self-cleaning function was not fit for its intended, anticipated, or reasonably foreseeable use.

121.    Accordingly, the Defective Oven would not: (a) pass without objection in the trade under the contract description; (b) are not fit for the ordinary purposes for which such goods are used; and (c) do not conform to the promises or affirmations of fact made on the container.

CLASS ACTION COMPLAINT

122.    As a direct and proximate result of the acts and omissions of Defendants as set forth above, Plaintiff and the Class have been damaged, and are entitled to relief as set forth hereunder.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

123.    Plaintiff re-alleges and incorporates each and every preceding factual allegation as if fully written herein, and pleads this claim for unjust enrichment against all Defendants.

124.    Plaintiff and members of the Class conferred a benefit upon GE.  Namely, Plaintiff and members of the Class paid money to GE for ownership of the Defective Oven.  GE retained that benefit.

125.    GE, however, retained that benefit under circumstances that make it inequitable for GE to retain such benefit without paying the value thereof.  Specifically, GE retained that benefit despite the fact that the Defective Oven was defective.

126.    Plaintiff, and the Class, are therefore entitled to disgorgement and/or restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and members of the Class, prays for relief as follows:

A.    An order certifying the proposed Class and designating Mr. Miller as representative of the Class, and designating his attorneys as Class Counsel;

B.    A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Oven and its self-cleaning function;

C.    An award to Plaintiff and the Class of compensatory, exemplary, and statutory damages, in an amount to be proven at trial;

D.    An order enjoining Defendants from further deceptive distribution, sales, and practices with respect to their Defective Oven;

E.    An order that Defendants remove and replace Plaintiff and Class members' Defective Ovens;

F.    Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

CLASS ACTION COMPLAINT

G.      Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act, including 15 U.S.C. § 2310(d);

H.      For restitution of all money or property wrongfully obtained by Defendants;

I.      For disgorgement, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the Defective Oven;

J.      An award of attorneys fees and costs pursuant to California Code of Civil Procedure § 1021.5, or as otherwise allowed by law;

K.      An award of pre-judgment and post-judgment interest, as provided by law;

L.      Leave to amend the Complaint to conform to the evidence produced at trial; and

M.      Such other relief as may be appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury of all claims so triable.

Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

DATED:  December 7, 2017          By:  /s/ Gordon M. Fauth, Jr.

Gordon M. Fauth, Jr.
Of Counsel
Rosanne L. Mah
Of Counsel
**FINKELSTEIN THOMPSON LLP**
100 Pine Street, Suite 1250
San Francisco, California 94111
Direct: (510) 238-9610
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Rosalee B. C. Thomas
rbcthomas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
3201 New Mexico Avenue, NW, Suite 395
Washington, D.C. 20016
Tel.: (202) 337-8000
Fax: (202) 337-8090

*Attorneys for Individual and Representative Plaintiff John Craig Miller*

CLASS ACTION COMPLAINT